UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SAMUEL FETCHERO and ALLISON FETCHERO,<br><br>            Plaintiffs,<br><br>    v.<br><br>AMICA MUTUAL INSURANCE COMPANY, a foreign insurance company,<br><br>            Defendant. | CASE NO. 2:22-cv-400<br><br>ORDER ON PLAINTIFFS' MOTION TO COMPEL, AND DEFENDANT'S MOTION FOR AN EXTENSION AND MOTION FOR A PROTECTIVE ORDER |

This is an insurance bad faith action brought by Plaintiffs Samuel and Allison Fetchero against their insurer, Defendant Amica Mutual Insurance Company. Pending before the Court are several related discovery motions: the Fetcheros moved to compel production of notes evaluating loss reserves from Amica's insurance claim file, while Amica moved for a protective order barring the Fetcheros from deposing two of its employees, one of whom authored the loss reserve evaluation. Dkt. Nos. 36, 39. Because Amica's motion for a protective order came after the Court's deadline for discovery motions, Amica moved to extend the deadline for considering such motions. Dkt. No. 38.

Having reviewed the motions and supporting documents, the Court DENIES the Fetcheros' motion in part and ORDERS Amica to provide the claim file notes in question to the

Court for *in camera* review. The Court reserves ruling on the remaining motions until after it has conducted its *in camera* review.

## BACKGROUND

On April 5, 2016, an underinsured driver rear-ended Plaintiff Samuel Fetchero. Dkt. No. 27 at 2. Fetchero alleges he suffered multiple injuries including a mild traumatic brain injury. Dkt. Nos. 27 at 2 ¶ 9; 36 at 3–4. Fetchero's spouse, Plaintiff Allison Fetchero, alleges loss of consortium. Dkt. No. 27 at 2 ¶ 10. The Fetcheros settled their claims against the at-fault driver for $100,000—the full limits under her insurance policy. *Id.* ¶ 11. They then sought the full $1,000,000 policy limit under their Underinsured Motorist ("UIM") policy with Amica. *Id.* at 3 ¶ 16; Dkt. No. 36 at 6. Amica offered to settle the Fetcheros' claims for $25,000. *Id.* ¶ 20. The Fetcheros bring breach of contract, bad faith, and Washington Insurance Fair Conduct Act claims. *Id.* at 4–6 ¶¶ 28-42.

The Fetcheros' discovery motion centers on a document created by Amica's associate claim examiner, Alex Rottler. On June 28, 2021, Rottler posted a 34-page evaluation of their insurance claim and request to increase the loss reserves completed by Amica's associate claims examiner, Alex Rottler, on June 28, 2021. Plaintiffs allege that Rottler failed to regularly review the Fetcheros' claim file and to reevaluate Amica's loss reserves—Amica's estimate of the value of the Fetcheros' claims—based on new information; instead, Rottler maintained the loss reserves at $20,000 for over two years before reevaluating and recommending an increased range of $300,000 to $500,000 on June 28, 2021. *Id*. at 8–9. Amica approved Rottler's loss reserve evaluation on July 2, 2021. *Id.* at 9. The Fetcheros argue that the loss reserve information is relevant to their bad faith insurance claims.

Plaintiffs moved to compel production of Amica's complete, unredacted claim file notes from June 28 and July 2, 2021.[1] Dkt. No. 36 at 2.

The issue raised by Amica's motion involves Plaintiffs' depositions of Amica's senior claim manager, Steve Peloquin, and Rottler on June 5, and June 7, 2023, respectively. *See* Dkt. No. 52 at 4. Each deposition lasted five hours. Dkt. No. 39 at 11. Plaintiffs argue they reserved the right to "call back" Rottler and Peloquin for another two hours, relying on an email exchange in which Amica's counsel stated as follows:

> We can do Mr. Peloquin on 6/5 and Mr. Rottler on 6/7, but with the time difference, a 7-hour block is difficult. We can offer 8 or 9 till 2 our time (11 or 12 till 5 their time), which would get you up to six hours. If you have a little bit more, I imagine we can stay over a little. If you have a good chunk more, we can arrange for a short second session.

Dkt. No. 52 at 4. Plaintiffs did not request a second deposition of Peloquin or Rottler immediately after completing their initial depositions.

On June 28, 2023, Amica provided the Fetcheros with a complete privilege log, which contained "a new version of the claim file notes that removed the redactions to reveal the subject line, author, date, and other information for all notes" Amica identified as privileged. Dkt. No. 39 at 4. The same day, Plaintiffs' counsel emailed Amica's counsel stating, "[i]n light of the partially unredacted portions of the claim file, I will need to call back Mr. Rottler and Mr. Peloquin to finish their depositions." Dkt. No. 39-1 at 64. Amica moved for a protective order to

---

[1] Plaintiffs also moved for an order commanding Defendant to "make available its Fed. R. Civ. P. 30(b)(6) designee to testify about the additional documents at [Defendant's] expense[.]" Dkt. No. 36 at 2. But Plaintiffs do not expound upon this request in their motion, nor do they explain why a second deposition is justified. *See generally id.* Therefore, their request to re-depose Defendant's Fed. R. Civ. P. 30(b)(6) representative is DENIED.

Additionally, Plaintiffs requested an order removing the confidential designations from certain training materials, Dkt. No. 36 at 2, but the parties resolved the issue among themselves and Plaintiffs no longer seek this relief. Dkt. Nos. 40 at 1; 42 at 7–8. The Court considers this aspect of their motion withdrawn.

ORDER ON PLAINTIFFS' MOTION TO COMPEL, AND DEFENDANT'S MOTION FOR AN EXTENSION AND MOTION FOR A PROTECTIVE ORDER - 3

bar Plaintiffs from further deposing Rottler and Peloquin, arguing their agreement to schedule a second session had expired by the time Plaintiffs requested it, and that the value of any further testimony would be negligible given that the notes are covered by work-product protection. *See* Dkt. Nos. 39 at 7–8; 54 at 3.

The Court now addresses the pending motions.

## DISCUSSION

### I. The claims file notes are "dual-purpose" documents. The Court must review them *in camera* to determine whether work-product protection is warranted.

Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Information need not be admissible at trial to be discoverable. *Id.* Courts are split about whether loss reserve information is relevant in bad faith cases against insurance companies. *See, e.g., Schreib v. Am. Fam. Mut. Ins. Co.,* 304 F.R.D. 282, 285 (W.D. Wash. 2014) (collecting cases). Plaintiffs assert that loss reserve information is relevant to their claims, and the Court agrees that this information may have some tendency to prove or disprove their claims. *See* Fed. R. Evid. 401. Amica does not challenge the relevancy of the loss reserve information, so the Court will not analyze its relevance further, and will instead focus on whether this information is protected by the work-product doctrine, which is the focus of Amica's argument.

Amica argues the work-product doctrine shields from discovery Rottler's notes about loss reserve information because they were made in anticipation of litigation. Dkt. No. 40 at 8. Specifically, Amica asserts that work-product protection was triggered on June 5, 2021, when Plaintiffs' attorney told Amica's claims adjuster that they would be filing a Washington Insurance Fair Conduct Act ("IFCA") claim against Amica. *Id*. at 9–10. Plaintiffs argue the

notes were made in the ordinary course of business so they do not qualify as work product. Dkt. No. 36 at 13–14.

"Work product is a qualified immunity protecting a party from discovery of documents and tangible items prepared by a party, or the party's representative, in anticipation of litigation." *Swinerton Builders v. Lexington Ins. Co., No.* 2:21-CV-259-RAJ-TLF, 2022 WL 1689708, at *2 (W.D. Wash. May 26, 2022) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-511 (1947); Fed. R. Civ. P. 26(b)(3)). When a document serves a dual purpose—meaning it was not prepared exclusively for litigation—then courts apply the Ninth Circuit's "because of" test. *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011). Under this test, courts must consider the totality of the circumstances to determine whether the "document was created *because of* anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Id.* (emphasis added) (citing *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt.*, 357 F.3d 900, 907 (2004)).

Because insurers in Washington state are required by statute to maintain loss reserves in the ordinary course of business, loss reserve documents are not prepared exclusively for litigation. *Barge v. State Farm Mut. Auto. Ins. Co.*, No. C16-0249JLR, 2016 WL 6601643, at *6 (W.D. Wash. Nov. 8, 2016); *see also* RCW 48.12.030(2), .090. Thus, courts look to the "because of" standard to determine whether work-product protection is warranted. *See, e.g.*, *Schreib* at 286; *Barge*, 2016 WL 6601643, at *6.

Neither party squarely addresses the proper standard for deciding this issue. Amica argues that the date on which Plaintiffs announced their intention to file an IFCA notice (i.e., June 5, 2022) is dispositive and that all documents generated after this date are protected work-product. Amica argues that the court's decisions in *Schreib* and *Barge* are "precedential law" that dictate this outcome, but Amica reads these cases too narrowly as neither one adopts a brightline

rule conferring work-product protection upon loss reserve information generated after an IFCA notice is received or becomes imminent. For instance, in *Schrieb,* the Court expressly found that the insurer's receipt of the IFCA notice "does not end the [work-product] inquiry" given that loss reserves are prepared in the ordinary course of business, and thus, dual nature. 304 F.R.D. at 286. Likewise, in *Barge*, although the court ultimately found that the loss reserve documents prepared by the insurer after receipt of the plaintiff's IFCA notice were protected by the work-product doctrine, the court recognized the dual-purpose nature of the documents and conducted an *in camera* review to determine whether, under "the totality of the circumstances," the disputed documents were "'fairly said to have been prepared or obtained because of the prospect of litigation.'" 2016 WL 6601643, at *6 (quoting *Richey,* 632 F.3d at 567).

Thus, the mere fact that an IFCA notice has been received or an intent to file one has been disclosed, does not necessarily rob the claims file of its dual-purpose nature or relieve the Court of its obligation to review the documents to determine whether they were created in anticipation of litigation or in the ordinary course of business. *See Young v. Safeco Ins. Co. of Am.,* No. 20-CV-01816-LK, 2022 WL 1061940, at *2 (W.D. Wash. Apr. 8, 2022) ("Because it is easy to imagine many scenarios in which an insurance company continues to adjust a claim after suit is filed or after an IFCA Notice is received, the mere fact that suit has been filed or an IFCA Notice has been received does not foreclose a court from evaluating whether a given document or communication serves a dual purpose." (cleaned up)).

The Fetcheros argue that the documents were created in the ordinary course of business, relying primarily on Rottler's deposition testimony that Amica trained him to periodically review the loss reserves and that he would have done so regardless of the prospect of litigation.

The Court cannot rule on this issue without viewing the documents in question. In light of the work-product protection standards, the Court determines that *in camera* review of the disputed documents is appropriate.

**II.    The Court does not consider the remaining motions.**

The Court declines to rule on the remaining aspects of Plaintiffs' motion to compel and Defendant's motion to extend the deadline for discovery motions and for a protective order until after it has conducted *in camera* review of the claims file.

## CONCLUSION

Accordingly, the Court DENIES the Fetcheros' motion in part and ORDERS Amica to provide the claim file notes in question to the Court for *in camera* review within seven (7) days of the date of this order. The Court reserves ruling on the remaining motions until after it has conducted its *in camera* review.

Dated this 20th day of September, 2023.

Jamal N. Whitehead
United States District Judge